UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KIRK D. WINGO,

    Petitioner,

vs.

ISIDRO BACA, *et al.*,

    Respondents.

Case No. 3:13-cv-00443-HDM-VPC

**ORDER**

This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by a Nevada state prisoner. This matter comes before the Court on the merits of the petition.

**I. Procedural History**

On May 28, 2010, in the Second Judicial District Court for the State of Nevada, petitioner was convicted pursuant to a guilty plea of murder with the use of a deadly weapon. (Exhibit 63).[1] Petitioner was sentenced to life in prison with parole eligibility beginning after 10 years, plus a consecutive term of 8-20 years for the weapon enhancement. (*Id.*). Petitioner appealed, and the Nevada Supreme Court affirmed his conviction on January 13, 2011. (Exhibit 79).

On March 10, 2011, petitioner filed a post-conviction petition for a writ of habeas corpus in the state district court. (Exhibits 83 & 84). Counsel was appointed, and counsel filed a supplemental petition. (Exhibits 86 & 92). The state district court denied the post-conviction

---

[1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 11-16.

habeas petition. (Exhibit 104). Petitioner appealed. (Exhibit 106). The Nevada Supreme Court affirmed the denial of the state habeas petition. (Exhibit 124). Remittitur was issued on July 10, 2013. (Exhibit 131).

Petitioner dispatched his federal habeas petition to this Court on August 15, 2013. (ECF No. 4). The petition raises two grounds of relief. In Ground 1, petitioner claims that his guilty plea was unknowing and involuntary because: (a) the State violated the guilty plea agreement; and (b) he was not properly informed of the consequences of his plea. (*Id.*, at pp. 5-7). In Ground 2, petitioner claims that his counsel was ineffective for the following: (1) failing to file pretrial motions; (2) failing to investigate; and (c) failing to inform petitioner that he was facing a potential life sentence. (*Id.*, at pp. 9-12). On September 23, 2013, petitioner filed a statement of additional claims, asserting that his constitutional rights were violated because he was denied the right to appear and testify at the grand jury proceedings. (ECF No. 8).

Respondents brought a motion to dismiss the petition. (ECF No. 10). By order filed June 16, 2014, this Court granted in part, and denied in part, the motion to dismiss. (ECF No. 21). The Court ruled that Grounds 1 and 2 of the petition are exhausted in their entirety. The Court granted respondents' motion to dismiss petitioner's additional claim of pre-plea error, as asserted in ECF No. 8, because it is barred by the holding in *Tollett v. Henderson*, 411 U.S. 258 (1973). The Court directed respondents to file an answer to Grounds 1 and 2 of the petition. On July 7, 2014, respondents filed an answer. (ECF No. 22). Petitioner filed a traverse on August 19, 2014. (ECF No. 31). On October 29, 2014, the Court denied petitioner's successive motions for the appointment of counsel. (ECF No. 32). The Court now considers the merits of the federal petition.

**II.  Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011).

**III. Discussion**

    **A. Ground 1**

In Ground 1 of the federal petition, petitioner claims that his guilty plea was unknowing and involuntary because: (a) the State violated the guilty plea agreement; and (b) he was not properly informed of the consequences of his plea. (ECF No. 4, at pp. 5-7).

    **1. Ground 1(a)**

Petitioner asserts that the State breached the plea agreement. (ECF No. 4, at pp. 5-6). Petitioner raised this same claim on direct appeal to the Nevada Supreme Court. (Exhibit 75, at pp. 6-11). The Nevada Supreme Court rejected this claim, as follows:

> Appellant Kirk Wingo claims that the State violated the plea agreement by implicitly arguing for a life sentence. As part of the guilty plea agreement, the State promised to recommend a sentence of 10 to 25 years but reserved the right to argue regarding the deadly weapon enhancement and present facts or witnesses at sentencing. The evidence offered by the State – victim impact evidence and evidence refuting Wingo's assertion that the victim was not killed with an inherently dangerous ligature but during rough sexual activity – did not violate this agreement. In light of the State's explicit reservation in the guilty plea agreement and Wingo's failure to object below, we conclude that he fails to show plain error.

(Exhibit 79, at p. 1). In the guilty plea agreement, the State agreed "to recommend a definite term of 25 years." (Exhibit 60, at p. 4). The agreement also provided that both "[t]he Defense and the State will be free to argue for an appropriate sentence as to the length of the term for the additional mandatory weapon enhancement." (*Id.*). The State also agreed that it would (a) not charge petitioner for a shooting incident in Sun Valley, Nevada, on July 10, 2005, and (b) dismiss a pending charge for battery by a prisoner. (*Id.*). The written guilty plea agreement included the following statement by petitioner: "I understand that, even though the State and I have reached this

plea agreement, the State is reserving the right to present any and all arguments, facts, and/or witnesses at sentencing." (*Id.*). Petitioner signed the guilty plea agreement. (*Id.,* at p. 7). Petitioner testified at his plea hearing that he did so "freely and voluntarily, and without threats or promises of any kind." (Exhibit 61, at p. 6).

At sentencing, petitioner asserted that he did not murder the victim, but that she died accidentally during rough consensual sexual activity. (Exhibit 62, at pp. 4-6). He asked for a sentence of 25 years to life plus a ten-year sentence for the deadly weapon enhancement. (*Id.*, at p. 6). In response, the State called a detective who had investigated the case to testify about his investigation and the evidence of petitioner's guilt. (*Id.*, at pp. 7-18). After his testimony, the State argued that petitioner's claims of innocence were false, and asked the court to impose the agreed upon sentence of 25 years for the murder and a consecutive sentence of 8-20 years for the weapon enhancement. (*Id.*, at pp. 18-19). Petitioner did not object to any of the State's presentation. (*Id.*, at pp. 7-19).

Following the arguments by counsel, the court heard victim impact testimony. (Exhibit 62, at pp. 21-28). After the victim's family members had been heard from, the court went over the PSI, pointing out that this was petitioner's sixth felony conviction, that he had committed the crime while on supervised release by the federal court system, that he had murdered the mother of two children, and that the PSI recommended the maximum penalty. (*Id.*, at pp. 28-29). Rather than follow the recommendations of the defense or the State, the judge agreed with the recommendation of the Division of Parole and Probation and sentenced petitioner to 10 years to life imprisonment plus a consecutive term of 8-20 years for the weapon enhancement. (*Id.*, at p. 29).

With respect to petitioner's assertion that the State "implicitly" argued for a life sentence by presenting evidence to dispute his claims of innocence, the State and petitioner explicitly agreed in the written guilty plea agreement that the State was permitted to "present any and all argument, facts, and/or witnesses at sentencing." (Exhibit 60, at p. 4). The agreement was one of the key factors that the Nevada Supreme Court relied upon in denying petitioner's claim. (Exhibit 79, at p. 1). The Nevada Supreme Court reviewed the plea agreement and the sentencing hearing, and found that the State had not breached the plea agreement. (Exhibit 79, at p. 1). The state court's factual

findings are presumed correct. 28 U.S.C. § 2254(e)(1); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's rulings were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the rulings were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies habeas relief as to Ground 1(a), the portion of Ground 1 that alleges the State violated the guilty plea agreement.

**2. Ground 1(b)**

In the second part of Ground 1, petitioner asserts that the trial court never informed him of "the full extent of the sentencing consequences of his plea." (ECF No. 4, at pp. 6-7). Petitioner claims that the court never "informed petitioner that he faced a possible life sentence in exchange for his guilty plea." (*Id.*, at p. 6). This claim was raised during petitioner's post-conviction habeas proceedings. (Exhibit 119, at p. 9). The Nevada Supreme Court rejected petitioner's claim, as follows:

> Wingo alleged that his guilty plea agreement and plea canvass did not make it clear to him that the district court could impose a life sentence. Although Wingo claimed in his petition that he was not well-educated, he did not contend that he is illiterate or explain why he was unable to understand the terms of his guilty plea agreement. Having viewed Wingo's guilty plea agreement, we conclude that its terms are clear. Accordingly, the claim is belied by the record and did not entitle Wingo to an evidentiary hearing.

(Exhibit 124, at p. 2).

The written guilty plea agreement, signed by petitioner, states as follows:

> I understand that the consequences of my plea . . . are that I must be imprisoned for either: a) A period of life in the Nevada State Department of Corrections with the possibility of parole beginning when a minimum of 10 years has been served; or b) For a definite term of 25 years in the Nevada State Department of Corrections, with eligibility for parole beginning with a minimum of 10 years has been served.

(Exhibit 60, at p. 3). The plea agreement also provided: "I understand that the Court is not bound by the agreement of the parties and that the matter of sentencing is to be determined solely by the Court." (*Id.*, at p. 5). At the plea canvass, the judge asked petitioner whether he understood that the

-6-

maximum possible penalty included: "A period of life in Nevada State Prison with the possibility of parole, with eligibility for parole beginning after a minimum of ten years has been served . . . ." (Exhibit 61, at p. 6). Petitioner responded, "Correct, sir, I do understand." (*Id.*, at p. 7). Petitioner's claim that he was not informed that he faced a possible life sentence is belied by the record.

In rejecting petitioner's claim, the Nevada Supreme Court specifically indicated that it reviewed the guilty plea agreement and the district court's canvass. (Exhibit 124, at p. 2). The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1); *see Taylor v. Maddox*, 366 F.3d at 999. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's rulings were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the rulings were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies habeas relief as to Ground 1(b), the portion of Ground 1 that alleges the trial court never informed petitioner of the sentencing consequences of his plea.

**B. Ground 2**

In Ground 2, petitioner claims that his counsel was ineffective on the following grounds: (a) failing to file pretrial motions, including conducting discovery; (b) failing to investigate; and (c) failing to inform petitioner that he was facing a potential life sentence. (ECF No. 4, at pp. 9-12).

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) counsel's performance was unreasonably deficient, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be

"highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct. 1411, 1413 (2009)). In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" 563 U.S. at 190 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Id*. at 185. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

**1. Grounds 2(a) & 2(b)**

Petitioner asserts that his counsel was ineffective for failing to file pretrial and discovery motions, and failing to properly conduct investigation of his case. (ECF No. 4, at pp. 9-10).

Petitioner raised similar conclusory claims during his appeal from the denial of his state post-conviction habeas petition. (Exhibit 119, at pp. 10-11). The Nevada Supreme Court denied petitioner's claims of ineffective assistance of counsel. (Exhibit 124). The Nevada Supreme Court determined that petitioner's claims were "naked allegations" that were insufficient to warrant an evidentiary hearing and that petitioner failed to satisfy his burden of proving deficiency on counsel's part, and any resulting prejudice. (ECF No. 124, at pp. 2-3). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1); *see Taylor v. Maddox*, 366 F.3d at 999. Petitioner has failed to demonstrate that his counsel's performance was deficient or that he was prejudiced under *Strickland*. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies habeas relief as to the ineffective assistance of counsel claims in Grounds 2(a) and 2(b), which allege that counsel was ineffective for failing to file pretrial and discovery motions, and for failing to properly conduct investigation of petitioner's case.

### 2. Ground 2(c)

Petitioner claims that his counsel was ineffective for failing to inform him that he faced a life sentence. (ECF No. 4, at pp. 10-11). Petitioner claims that, if not for his counsel's ineffective assistance, he would not have entered a guilty plea. (*Id.*, at p. 11). Application of the *Strickland* test where ineffectiveness of counsel is alleged to invalidate a plea has been defined as follows:

> [T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson, supra*, and *McMann v. Richardson, supra*. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  The modified *Strickland* prejudice standard in guilty plea cases asks whether there is a probability that, but for counsel's alleged errors, defendant would not have pleaded guilty, but would have insisted on going to trial.  *Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1997).

In his appeal from the denial of his state post-conviction habeas petition, petitioner claimed that his counsel was ineffective for failing to inform him that he faced a life sentence.  (Exhibit 119, at p. 9).  The Nevada Supreme Court rejected this argument, as follows:

> Wingo alleged that counsel never explained to him that he was facing a potential life sentence by pleading guilty.  Assuming this factual allegation is true and counsel's failure rendered his performance deficient, in order for Wingo to obtain relief, Wingo must prove by a preponderance of the evidence that, but for counsel's deficient performance, there was a reasonable probability that "he would not have pleaded guilty and would have insisted on going to trial."  Kirksey v. State, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996) (internal quotation marks and emphasis omitted).  In his petition below, Wingo admitted that he "understood that the maximum penalty was life" and his signed plea agreement states that "I understand that the Court is not bound by the agreement of the parties."  In light of this signed guilty plea agreement and Wingo's admission, he failed to establish by a preponderance of the evidence that there was a reasonable probability that he would have insisted on going to trial.  Accordingly, this factual allegation, even if true, did not entitle Wingo to relief and the district court did not err in denying him an evidentiary hearing.

(Exhibit 124, at pp. 1-2).  The state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1); *see Taylor v. Maddox*, 366 F.3d at 999.  Petitioner has failed to demonstrate that his counsel's performance was deficient or that he was prejudiced under *Strickland*.  Petitioner has not shown a reasonable probability that, but for counsel's alleged errors, that he would not have pleaded guilty, but would have insisted on going to trial.  *See Hill v. Lockhart*, 474 U.S. at 58.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court denies habeas relief as to Ground 2(c), the portion of Ground 2 that alleges counsel was ineffective for failing to inform petitioner that he faced a life sentence.

## IV. Certificate of Appealability

District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* In this case, no reasonable jurist would find this court's denial of the petition debatable or wrong. The Court therefore denies petitioner a certificate of appealability.

## V. Conclusion

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion for a status check of this case (ECF No. 37) is **GRANTED**, to the extent that this order resolves all issues remaining in this case.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this 24th day of August, 2016.

_____
UNITED STATES DISTRICT JUDGE